UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| AMICA MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 4:16 CV 1403 CDP |
| D.B., Personal Representative of the Estate of M.R., et al., | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

T.M. was involved in an abusive sexual relationship with M.R., from which she suffered emotional and physical injuries. M.R. is now deceased. T.M. seeks to recover under M.R.'s homeowners insurance for her emotional injuries. M.R.'s insurer, Amica Mutual Insurance Company, seeks a declaration that its policy of insurance does not apply to any of T.M.'s injuries. T.M. and Amica have filed cross-motions for summary judgment on the claims. Because the undisputed evidence shows that the relevant insurance policy does not provide coverage for T.M.'s emotional injuries, I will grant summary judgment to Amica on that claim. I lack jurisdiction to determine whether the policy covers T.M.'s other injuries.

### Background

T.M. is a mentally disabled adult woman who is represented in this action by

her legal guardian, D.P.[1] The estate of M.R. is represented by D.B.[2]

Between January and March 2012, T.M. had several sexual encounters with M.R. Some of these encounters involved third persons, and some were photographed and video recorded and later displayed to others without T.M.'s consent. T.M. suffered physical and emotional injuries from this abusive sexual relationship.

During this period, M.R.'s residence was insured with Amica through a homeowners insurance policy that provided coverage for bodily injury to third parties caused by an accident occurring at the residence, with such coverage subject to various exclusions. Amica also offered optional coverage to its insureds extending liability coverage for personal injury to others, such as for invasion of privacy.

In August 2016, T.M. issued a demand letter to Amica to settle all claims for harms to her caused by M.R. The letter detailed the emotional injuries suffered by T.M. and also referred to an instance of physical injury that occurred during the relationship. Amica concluded there was no coverage under the policy and filed this declaratory judgment action.

---

[1] D.P. filed the motion for summary judgment, and responded to Amica's motion, on behalf of T.M. For ease of reference, I will refer to the arguments and positions pursued by D.P. as those of T.M.

[2] D.B. answered Amica's First Amended Complaint on December 30, 2016, and has taken no action in this case since.

In this litigation, T.M. contends that M.R.'s policy included the optional coverage extending personal injury liability and that she is therefore entitled to recover under the policy for the emotional injury she sustained as a result of M.R.'s invasion of her privacy. Amica argues that this optional coverage was not a part of M.R.'s policy of insurance and that therefore T.M. cannot recover under the policy for her emotional injuries. Amica also argues that policy exclusions preclude T.M.'s recovery for bodily injuries arising from M.R.'s conduct, to which T.M. responds that she seeks no such recovery.

## Summary Judgment Standard

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). I must view the evidence in the light most favorable to the nonmoving party and accord it the benefit of all reasonable inferences. *Scott v. Harris,* 550 U.S. 372, 379 (2007).

Initially, the moving party must demonstrate the absence of an issue for trial. *Celotex,* 477 U.S. at 323. Once a motion is properly made and supported, the nonmoving party may not rest upon the allegations in its pleadings or in general denials of the movant's assertions, but must instead proffer admissible evidence

that demonstrates a genuine issue of material fact. Fed. R. Civ. P. 56(c); *Conseco Life Ins. Co. v. Williams,* 620 F.3d 902, 910 (8th Cir. 2010); *Howard v. Columbia Pub. Sch. Dist.,* 363 F.3d 797, 800-01 (8th Cir. 2004).

If the nonmoving party fails to properly address an assertion of fact made by the movant, the Federal Rules of Civil Procedure permit me to consider the fact undisputed. Fed. R. Civ. P. 56(e)(2). The Local Rules of this Court, however, require it. Under Local Rule 4.01(E), moving parties must include a statement of uncontroverted material facts with their memorandum, with citations to the record if the fact(s) are established by the record.

> Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine issue exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. *All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.*

E.D. Mo. L.R. 4.01(E) (emphasis added).

**Evidence Before the Court on the Motions**

As an initial matter, I deem admitted all facts outlined by Amica in its Statement of Uncontroverted Material Facts (ECF #42) that are not specifically controverted by T.M. Of the 175 separately numbered paragraphs proffered by Amica as undisputed facts, T.M. responded to 151 of them with the statement

- 4 -

"neither admits nor denies." (*See* ECF #53.) Since these statements are not specifically controverted, they are deemed admitted. In response to other paragraphs, T.M. simply "denies" Amica's factual averments without citation to any material in the record or any explanation showing the presence of a genuine dispute as to those facts as required by Local Rule 4.01(E) and Fed. R. Civ. P. 56(c)(1). "A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996) (internal quotation marks and citation omitted). *See also Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1032 (8th Cir. 2007) ("Courts have neither the duty nor the time to investigate the record in search of an unidentified genuine issue of material fact to support a claim or a defense.") (internal quotation marks and citation omitted). Accordingly, the factual averments that T.M. simply "denies" with nothing more are likewise deemed admitted.

Against this backdrop, I now turn to the evidence before the Court on the motions.

T.M. was injured by the actions of M.R. that occurred from January 2012 through March 2012. Amica admits that M.R.'s conduct invaded T.M.'s privacy and that T.M. suffered emotional damages.

M.R. and his wife L.R. were insured with Amica from May 2006 to October 2016. During that time, Amica issued twelve homeowners insurance policies to them. Policy number 620724-20KA (the Policy) was in effect from July 6, 2011, to July 6, 2012, and covered the period of time relevant to this action. Under the Policy, Amica agreed to pay sums if a claim for damages was made against the insured "because of bodily injury or property damage caused by an occurrence to which [] coverage applies[.]" (Amica Exh. 8, ECF #44-6 at 23.) The Policy defined "bodily injury" as "bodily harm, sickness or disease, including required care, loss of services and death that results." An "occurrence" was defined as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in" bodily injury or property damage. Under the Policy's exclusions, there was no coverage for, *inter alia*, bodily injury or property damage which was "expected or intended by an insured"; arose "out of sexual molestation, corporal punishment or physical or mental abuse"; or arose "out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812." (*Id.* at 8-9, 24-25.)

Amica provides its insureds with a Homeowners Insurance Information Digest and advises the insureds that the Digest summarizes policy coverages and limitations and highlights other available coverages. The Digest describes sixteen

"optional coverages" that are available for insureds to purchase that are not included in the basic policy. Among these optional coverages is coverage for "Personal Injury Liability," which "extends Liability coverage to protect you for personal injury to others, such as false arrest, libel, slander or invasion of privacy." This coverage is available for additional premium.

For each new or renewed policy issued to M.R. and L.R., Amica provided a policy packet to them that contained the respective policy. From the first policy issued in May 2006 to the Policy at issue here, Amica provided seven packets to M.R. and L.R. Four of these packets included the Information Digest. The other three did not. The packet containing the Policy at issue in this action included the Digest.[3]

In their application for insurance preceding the Policy, M.R. and L.R. elected the following optional coverages, which are among the sixteen "optional coverages" listed in the Information Digest: Additional Amount of Insurance for Dwelling, Personal Property Replacement Cost, Scheduled Personal Property, and Water Back Up and Sump Overflow. All of these endorsements and their corresponding endorsement numbers are listed on the Policy's declarations page, and a written endorsement for each of these coverages is attached to the Policy, each bearing the statement "This Endorsement Changes the Policy. Please Read it

---

[3] Of the five packets that contained the policies issued July 2012 and after, three contained the Information Digest.

Carefully." An additional premium of $41.00 is listed on the declarations page for "optional coverages," which corresponds with Amica's charge to M.R. and L.R. for the optional Water / Sump endorsement. (ECF #44-12 at 7, Exh. A to Amica Exh. 14 at p. 3.)

Over the course of M.R. and L.R.'s ten-year insurance relationship with Amica, none of their applications for insurance included an election for optional Personal Injury Liability coverage, including the application preceding the Policy at issue here. The Policy's declarations page does not list Personal Injury Liability as an endorsement to the Policy or include its corresponding endorsement number. Nor is a written endorsement for this optional coverage attached to the Policy.

**Discussion**

A. <u>Emotional Injuries</u>

T.M. contends that the Information Digest is part and parcel of the Policy. She argues, therefore, that because Personal Injury Liability is included in the Digest's description of optional coverages and the Policy shows a charged premium for optional coverages, the Policy covers her claim for emotional damages for invasion of privacy. In the circumstances of this case, the Information Digest is not part of the Policy as a matter of law, and T.M.'s claim fails.

I apply Missouri law in this diversity action. Under Missouri law, "the interpretation of an insurance contract is generally a question of law[.]" *D.R.*

*Sherry Constr., Ltd. v. American Family Mut. Ins. Co.*, 316 S.W.3d 899, 902 (Mo. banc 2010). "Under Missouri rules of construction, the language in an insurance contract is given its plain meaning if the language is plain and unambiguous." *Becker Metals Corp. v. Transportation Ins. Co.*, 802 F. Supp. 235, 239 (E.D. Mo. 1992). If an insurance policy is open to different constructions, Missouri courts will adopt the construction most favorable to the insured. *St. Paul Fire & Marine Ins. Co. v. Missouri United Sch. Ins. Council*, 98 F.3d 343, 345 (8th Cir. 1996). The policy must be read as a whole to determine the intent of the parties. *Columbia Mut. Ins. Co. v. Schauf*, 967 S.W.2d 74, 77 (Mo. banc 1998); *The Renco Group, Inc. v. Certain Underwriters at Lloyd's, London*, 362 S.W.3d 472, 478 (Mo. Ct. App. 2012). Absent a statute or public policy requiring coverage, I may not use "inventive powers" to rewrite a policy to provide coverage for which the parties never contracted. *Melton v. Country Mut. Ins. Co.*, 75 S.W.3d 321, 327 (Mo. Ct. App. 2002); *Lang v. Nationwide Mut. Fire Ins. Co.*, 970 S.W.2d 828, 830 (Mo. Ct. App. 1998). T.M. has the burden of showing that her loss and damages are covered by the Policy. *American States Ins. Co. v. Mathis*, 974 S.W.2d 647, 649 (Mo. Ct. App. 1998).

In her motion for summary judgment and in response to Amica's motion, T.M. argues only that the Personal Injury Liability optional coverage applies to her claim. The undisputed facts before the Court show, however, that this optional

coverage was not part of the Policy.

"[I]t is the responsibility of those seeking insurance to advise an agent as to what they want." *Blevins v. State Farm Fire & Cas. Co.*, 961 S.W.2d 946, 951 (Mo. Ct. App. 1998) (discussing duties of agent versus insured). *See also State Auto Prop. & Cas. Ins. Co. v. Boardwalk Apartments, L.C.*, 572 F.3d 511, 515 (8th Cir. 2009) (applying Missouri law). Beginning in 2007 and over the course of the next four years, Amica conspicuously provided M.R. and L.R. the opportunity to elect Personal Injury Liability as an optional coverage when extending or changing policy coverage. In 2007, M.R. and L.R. were first provided the Information Digest that summarized the optional coverages available to them for additional premiums. The Digest explained that the summary descriptions were not complete statements of coverage, and that details of coverage were in the policy contract itself. Beginning with their first policy of insurance issued in 2006, and continuing through the Policy at issue here (and indeed continuing thereafter), M.R. and L.R. affirmatively selected certain – but not all – optional coverages, and these selected coverages were made a part of their policy contracts, with full statements of coverage included by way of written endorsements. Although they were presented with information that Personal Injury Liability was available as an optional coverage, M.R. and L.R. did not make this election, as is evidenced on their application for coverage that preceded the Policy at issue here, as well as all other

applications completed by them. In short, the applications and policy documents signed by M.R. and L.R., including the relevant Policy at issue, show that they never selected this optional coverage, and the coverage never became part of the policy contracts. I may not rewrite the Policy to include coverage for which the parties never contracted. *Lang*, 970 S.W.2d at 830.

T.M. also argues, however, that the Information Digest is itself part of the Policy, and that the "optional coverages" for which M.R. and L.R. paid an additional premium means all optional coverages in the Digest, including Personal Injury Liability. I disagree.

Descriptive brochures may constitute a part of the insuring agreement if it "contains provisions found nowhere else which are essential to a complete contract[.]" *Crum-Vanlandingham v. Blue Cross Health Servs., Inc.*, 734 S.W.2d 266, 269 (Mo. Ct. App. 1987). *See also Behr v. Blue Cross Hosp. Serv., Inc., of Missouri*, 715 S.W.2d 251, 254-55 (Mo. banc 1986). If an ordinary consumer could reasonably expect coverage based on representations made in the brochure, and reasonably relied on such representations, those representations are considered as terms of the insurance contract. *Crawford v. Mid-America Ins. Co.*, 488 S.W.2d 255, 259 (Mo. Ct. App. 1972).

T.M. does not identify any provisions of the Digest that are essential to complete the insurance contract between M.R. and Amica. The Policy and its

declarations and endorsements contain all of the essential terms to form a contract of insurance, *see Burckhardt v. General Am. Life Ins. Co.*, 534 S.W.2d 57, 64-65 (Mo. Ct. App. 1975); and the Digest – including its description of optional coverages – does not add provisions that are essential to complete the contract. The Digest, therefore, does not constitute part of the insurance agreement.

Further, a review of the entirety of the Information Digest shows that an ordinary consumer would understand that the Digest itself is not a part of the policy contract. First, expressly written in bold and italicized font near the top of the first page is: "***The following are not complete statements of coverage; for full details see policy contract.***" *Cf. Affirmative Ins. Co. v. Broeker*, 412 S.W.3d 314, 322 (Mo. Ct. App. 2013) (terms of the policy, not the rental agreement, controlled where, *inter alia*, rental agreement expressly stated that it was a summary of coverage provided by the policy and was subject to the terms of the policy). In addition, the Digest's descriptions of the offered coverages, including the optional coverages, are written in terms of general, non-binding recommendations and suggestions – such as what "should be insured" and offering that insureds "may" increase certain coverage. *Contra General Am. Life Ins. Co. v. Barrett*, 847 S.W.2d 125 (Mo. Ct. App. 1993) (reasonable person would understand that "Rules" constituted part of insurance contract where application instructions expressly stated that Rules "governed" beneficiary elections and "constitute the

contract" between insured and insurer regarding distribution of proceeds upon death). The descriptions set out in the Digest are not of such a nature that an ordinary consumer would reasonably expect all of the optional coverages described therein to be considered terms of the actual insurance contract. Nor would an ordinary consumer rely on such descriptions to provide coverage. There simply is no contract set out in the Digest.

Moreover, nothing before the Court shows that when M.R. or L.R. purchased or renewed their homeowners insurance, they acted in reliance on the Digest's summary description of Personal Injury Liability to provide coverage. Nor can any such reliance be reasonably inferred given their affirmative election of certain optional coverages and not others on their insurance applications.

In light of the above, a reasonable person of ordinary understanding would not consider the Digest's summary description of optional Personal Injury Liability coverage to constitute part of the Policy at issue in this action. *Cf. Crawford*, 488 S.W.2d at 259) (court looks to what insureds had a reasonable right to expect as to coverage). Because the optional Personal Injury Liability coverage is not part of the Policy, Amica is entitled to summary judgment to the extent T.M. claims she is entitled to recover emotional damages thereunder.

B. <u>Bodily Injuries</u>

Amica claims that policy exclusions prevent T.M. from recovering damages

for bodily injury under the Policy. In response, however, T.M. affirmatively and repeatedly states that she is not seeking coverage for bodily injuries.

As noted above, this action is before me on Amica's complaint for declaratory judgment in which it asks me to construe the Policy's applicable coverage provisions, exclusions, and conditions in relation to T.M.'s claims for damages and injuries under the Policy. Where there is no claim for coverage, however, there is lack of adversity between the parties and the controversy is only hypothetical. In such circumstances, the federal court lacks subject matter jurisdiction. *Acuity v. Rana*, No. 4:11-00277-CV-FJG, 2012 WL 289860, at *2 (W.D. Mo. Jan. 31, 2012).

Here, Amica seeks resolution of a question relating to its legal rights and obligations arising under the Policy in relation to coverage for T.M.'s bodily injuries suffered as a result of M.R.'s conduct. While this type of question is commonly brought in declaratory judgment actions, it nevertheless must relate to a dispute between parties who have taken adverse positions with respect to their existing obligations. *See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 242 (1937). Because T.M. explicitly and unequivocally represents to this Court that she does not seek damages or coverage for bodily injuries,[4] it

---

[4] Indeed, T.M. has submitted to the Court a petition filed on her behalf in State court against the estate of M.R. in which she raises claims and seeks relief for emotional damages only. (*See* T.M.'s Exh. G, ECF #59-1.)

appears that Amica's claim for declaratory judgment regarding coverage for these injuries is moot. Accordingly, my determination as to whether the Policy provides coverage on this uncontested issue would amount to an advisory opinion as to the validity of a possible defense to a non-existing claim. "I do not have the power to give such an advisory opinion – even in a declaratory judgment action." *Alabama State Fed'n of Labor, Local Union No. 103, United Bhd. of Carpenters & Joiners of Am. v. McAdory*, 325 U.S. 450, 461 (1945).

Because the information before Court fails to show the parties to be in adverse positions with respect to Policy coverage for bodily injuries, there is no justiciable issue involved in this claim to bring it within the Court's jurisdiction. I will therefore dismiss Amica's claim seeking a declaratory judgment on Policy coverage for T.M.'s bodily injuries. *See Arizonans for Official English v. Arizona,* 520 U.S. 43, 48 (where case loses essential elements of a justiciable controversy, it cannot be retained for adjudication on the merits).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff Amica Mutual Insurance Company's Motion for Summary Judgment [40] is granted in part and denied in part as set out in this Memorandum and Order. Amica Mutual Insurance Company shall have judgment against defendants on its claim that Policy number 620724-20KA does not provide coverage for T.M.'s emotional injuries arising out of

M.R.'s invasion of T.M.'s privacy. Amica Mutual Insurance Company's claim that Policy number 620724-20KA does not provide coverage for T.M.'s bodily injuries is dismissed without prejudice.

**IT IS FURTHER ORDERED** that defendant T.M.'s Motion for Summary Judgment, filed by her legal guardian D.P. [46], is denied.

A separate Judgment is entered herewith.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 6th day of October, 2017.